Alba vs Moriarty.

## No. 8917.

### CHARLES A. ALBA vs. D. MORIARTY & Co.

Where a person is employed at $1800 *per year*, and after he has notified his employers that he would make no engagement for less than a year, and for one year renders the services stipulated without complaint, and at the end of the year is not discharged, but continues to attend to the business as before, with the knowledge and apparent sanction of the employer, and at the end of a few months in the second year is discharged without cause, he will be entitled to recover the entire salary for the second year. The contract was a continuing contract by the year, subject to be terminated at the end of each year by the wish of one or both parties thereto.

APPEAL from the Civil District Court for the Parish of Orleans. *Houston*, J.

*Nicholls & Carroll* for Plaintiff and Appellee.

*Jonas & Nixon* and *E. D. White* for Defendants and Appellants.

The opinion of the Court was delivered by

TODD, J. The plaintiff sues the defendant, David Moriarty, doing business in New Orleans as a wholesale grocer under the name of D. Moriarty & Co., for a year's salary as traveling salesman, alleging that he had been employed for one year but had been discharged by the defendant before its termination, without cause.

The defendant's answer contains first the general issue, and then further avers, substantially, that the plaintiff had been employed on November 15, 1880, for one year, by Moriarty & Craft, to whose business he (defendant) succeeded. That after the expiration of the year he did not retain plaintiff longer in his employment, but declined doing so.

That he was willing to engage him for another year upon different terms, but that after the term of his service had expired the plaintiff avoided him and gave him no opportunity of speaking to him about it. That finally discovering that there had been delays on plaintiff's part in making returns of his collections, on 24th of December, 1881, he informed plaintiff that he would not employ him "any further on any terms"—the last sentence being a literal quotation from the answer.

The facts appear to be these:

The plaintiff, previous to his employment by Moriarty & Craft, was conducting a retail store in the parish of Assumption; that some time in the fall of 1880, he had some conversation with these parties looking to an engagement with them; that in the course of it plaintiff informed them that he was comfortably and permanently situated where he was,

Alba vs. Moriarty.

and that he would work for no house except by the year. A few days after he received the following communication:

OFFICE OF MORIARTY & CRAFT,

Wholesale Grocers and Importers, Nos. 111 and 113 Poydras St.,

NEW ORLEANS, October 23, 1880.

C. F. Alba, Esq., Napoleonville:

DEAR SIR—We have talked the matter over, and will engage you (at $1800) per year. So please come to New Orleans and make arrangements. Drum around and bring few orders when you come to town.

Truly yours,                    MORIARTY & CRAFT.

Craft.

Please excuse brevity, as it is nearly 12 o'clock.—C.

The plaintiff, in response to this letter, came to the city, accepted the proposition it contained and entered upon the duties of his employment on the 15th of November of the year mentioned. He continued in the active discharge of these duties throughout the year.

In October, 1881, Moriarty bought out Craft's interest in the concern and mentioned this fact to the plaintiff, and spoke of continuing him in his employment.

After the expiration of the year, plaintiff remained in the establishment, making his usual trips to the country and reporting orders as before, and without any further agreement with the defendant, when on the 24th of December he was discharged. Before that date the defendant had mentioned to him that the time of his first engagement was out, but did not propose any new terms touching his employment and salary, expressed no dissatisfaction with him, at least to the plaintiff himself, and delivered him on one occasion samples to be taken with him on one of his country trips. There was no want of opportunity between the end of the first year's engagement and the date of plaintiff's discharge for defendant to have submitted a proposition to him as to any change of terms or any new arrangement he might wish to make, and no evidence of any effort or design on the part of the plaintiff to avoid the defendant, as charged. The answer of the defendant, and especially the part literally quoted above, virtually admits that defendant regarded the plaintiff as still in his employ until the 24th of December.

It is also shown by Moriarty's own testimony that at the time he dismissed the plaintiff he had not been informed about the alleged irregularities in his collections, charged in the answer against the plaintiff, and therefore they could not have entered into the reasons for his dis-

charge. Even if they had, the evidence shows that they were not of a character to have justified defendant's action, and were really an afterthought and an evident pretext. The plaintiff, by the terms of the letter evidencing the contract, was employed, not for one year, but at $1800 per year. It was, therefore, a continuing contract from year to year, until terminated by mutual consent or by timely notice given by either party at or before the expiration of the year.

The case was tried by a jury, who returned a verdict for the plaintiff for the amount of his salary as stated in the agreement, subject to a credit admitted by the plaintiff.

After a critical examination of the entire evidence, we do not see how a different verdict could have been returned.

An amendment in the phraseology of the judgment is asked for by plaintiff, to the effect that by its terms it be given against Daniel Moriarty, instead of D. Moriarty & Co., as rendered in the district court. This amendment is a proper one.

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower court be amended by substituting for the words "against the defendants, D. Moriarty & Co.," the following: "against the defendant, Daniel Moriarty, doing business under the name of D. Moriarty & Co.;" and as thus amended it be affirmed, with costs in both courts.

---

### DISSENTING OPINION.

BERMUDEZ, C. J. The plaintiff claims that he was employed by the year, as drummer, by Moriarty & Craft, from the 15th November, 1880, at a salary of $1800, payable monthly.

There are several good reasons why he should not recover.

#### I.

His alleged contract is not proved. The letter written to him in which the words *per year* are found was an offer, which was accompanied with a request to come to see the writers to make arrangements. He, himself, says that the terms were to be reduced to writing. The record fails to show that if any were ever entered into, they were thus drawn up. The contract was not consummated.

The argument, based on the fact that he was paid his services at that rate, proves employment, but not the term for which it was to last.

#### II.

Tacit reconduction, which is the only ground upon which the claim can be made to rest, is expressly provided for by special legislation

concerning leases of real estate, but it is nowhere announced by *law* as applicable to the letting of labor or the hire of services. Commentators, themselves, say that it should not be inferred, unless from the strongest circumstances, justified by usage and custom.

If it be invoked by analogy, then the rules and restrictions prescribed as to the one should be observed as to the other.

In the case of property, the law is that if the tenant continues a week after the expiration of the lease, without opposition by the lessor, the lease will be presumed to be continued, but by the month only.

Why, then, claim that tacit reconduction exists in a case of hire of labor or industry, and say that if the parties, or either, do not put an end to it formally at the expiration of the term, the contract must be deemed renewed for another year.

The law is positive, that a man may hire out his services only for a certain limited time, or the performance of a specific undertaking—not indefinitely.

Had the law intended that tacit reconduction should exist in cases of hire of labor, as it does it shall in cases of real estate, it would have said so. Silence on that subject induces the inference that it did not enter in the economy of the law that it should.

### III.

Be that as it may, the difficulty is aggravated by the very circumstances of the case.

Concede that the contract of hire was entered into as claimed, who were the parties thereto? 1st. The plaintiff; 2d. Moriarty & Craft, as a firm, not as individuals.

That firm was dissolved before the termination of the year of employment, Moriarty continuing the business.

No doubt the dissolution of the firm could not impair plaintiff's rights under his contract with it; but it clearly was notice to him that it was to end with the year. After the dissolution, the partners continued bound as though it had not taken place, but for no longer term than the year.

The plaintiff sues to hold responsible, not the firm, not the partners thereof, *eo nomine*, but a former partner in his individual name.

If the contract which he relies upon be a continued contract, it can only be such between the original parties thereto in the capacities in which they acted at the time.

His claim could not stand against the firm for the second year, as it dissolved before the first year was out. How can the contract be en-

forced against one who was not a party to it, in his individual name, unless it has been alleged and shown that it was made the basis of one by the late partner, individually? There is no proof of such new contract for another year, to begin when the first would have expired, on the part of Moriarty. The plaintiff himself alleges that the dissolution occurred on October 1, 1881, and that then the contract was renewed by Moriarty. If that be so, then the second year would begin at that date and the defendant should be made to pay only the difference between the $1800 and the salary paid for October and November —added to the one hundred and forty-three dollars with which the plaintiff strangely credits his claim as so much received in advance. The judgment of the lower court, instead of being for $1657, should, at at best, be for $1337 only.

The pretension of plaintiff, under the circumstances of the case, is startling, and if sanctioned inflicts unwarranted loss and injury to an innocent party.

The case is simply that of a clerk employed for a year by a firm, subsequently dissolved before the end of his engagement, who sues individually a former member for a second year's salary, without any contract on his part, merely because he was retained after the expiration of the first year by such party some fifteen or twenty days.

Diligent search has been instituted here and elsewhere for a kindred precedent and none was found, no doubt because it never entered the mind of even the most rapacious subordinate that such a flimsy or bald pretension could be ventured to be built upon such nebulous foundation.

I, therefore, dissent from the opinion and decree.

Rehearing refused.