Lalande vs. Aldrich.

---

No. 10,294.

CAMILLE D. LALANDE vs. LYMAN G. ALDRICH.

| 41b | 306 |
| 44 | 791 |

In a contract between a planter and an overseer, under which the latter was employed for a series of years [at a stipulated salary, the fact that the overseer begins a new year without express agreement or renewal of terms, will be held as a tacit reconduction of the contract for the same term and at the same salary.

The conduct of an overseer, who impedes by rudeness and otherwise reprehensible conduct, the inspection of the plantation under his charge, by persons who are thereto authorized by his employer, and thereby jeopardizes the latter's interests, is a just cause for his discharge before the expiration of the term of his employment.

APPEAL from the Twentieth District Court, Parish of Assumption. *Beattie, J.*

---

*Pugh & Pugh* for Plaintiff and Appellee.

---

*W. E. Howell* for Defendant and Appellant.

---

The opinion of the Court was delivered by

POCHÉ, J. Plaintiff seeks to recover his wages as defendant's over-

seer on a sugar plantation for the whole of the year 1887, although he was discharged on the 12th of February of that year, resting his claim on the fact that he had been engaged by the year and that he was discharged without just or sufficient cause.

The defense is a denial that plaintiff was engaged by the year for 1887, and an averment in the alternative that, if it is found that his employment was for the whole year, he was discharged for a good and just cause.

Judgment was rendered in favor of plaintiff for the full amount of his demand, and defendant appeals.

I.

The first point of discussion involves the term for which plaintiff was employed in 1887.

The record shows that plaintiff had been employed as overseer by defendant at a stipulated salary for the whole year for each of the years 1883, 1884, 1885 and 1886, and that no change was made or intimated by either party at the end of 1886.

Without any formal agreement, either of employment or of terms, plaintiff continued his services in the management of defendant's plantation in the beginning of the year 1887, and conducted all planting operations to the knowledge, and with the consent, of defendant, until he was discharged, on the 12th of February.

It is in proof that, owing to financial embarrassments, the defendant was unable to furnish the means necessary for the labor of the month of January, the full amount of which was advanced without any security and paid out to the laborers, out of his own funds, by plaintiff.

It is true that from correspondence between the parties during that time it appears that defendant had expressed the desire to decrease the salary which plaintiff had been earning during the previous years, and that plaintiff had positively refused to submit to such diminution, expressing his intention of rather leaving the service. But the matter appears to have been dropped indefinitely and no change was thereby effected touching the relative positions of the parties.

In our opinion that incident must be considered as confirmatory of the alleged tacit reconduction of the employment of plaintiff by the year, which appears from all the circumstances affecting the question, as hereinabove stated, and otherwise contained in the record.

We, therefore, conclude that plaintiff had been employed for the whole year in 1887, and that the burden of proof is on the defendant to show that he was discharged for a cause sufficient in law.

## II.

The alleged serious ground of complaint, on which defendant relies to justify the discharge of plaintiff grows out of the following facts and circumstances: To the full and admitted knowledge of plaintiff, defendant, who resides in the State of Mississippi, was very heavily indebted to his factor and commission merchant in New Orleans, who held a mortgage on the plantation, equal in amount to the market value of the whole property. The crop of 1886 had not been profitable, but had, on the contrary, increased the indebtedness of the planter to his merchant, who, in consequence of the risky condition of things, was unwilling to make the advances necessary for the crop of 1887. Hence followed the failure of defendant to meet the cost of labor for the month of January, as hereinabove stated. While negotiations were pending between him and his merchant affecting the fate of the plantation, and as the defendant had no available resources with which to supply the plantation, it was agreed between these two parties that the merchant and creditor would have the property critically examined and inspected by two trusted agents of his own selection, and that upon their report he would decide whether to make further advances or to foreclose his mortgage.

Accordingly, the selection of the two agents was made, and they went to the plantation, bearing a letter from the commission merchant to plaintiff who was therein informed that the visit of the bearers was in furtherance of an agreement between the writer and the defendant, with the request that plaintiff should facilitate the agents in their inspection of the property, and with the information that their report would shape the merchant's course as to future advances for the cultivation of the plantation.

The plan proved to be offensive to plaintiff, who refused to show any courtesies or to extend any facilities to the visitors, towards whom he behaved in a very abrupt manner, and who thereupon retired from the plantation without making the inspection for which they had expressly gone there. On their report of the incident to their principal, the latter at once notified the defendant that he could have no more business connection with him touching the plantation, and that he would foreclose the mortgage, unless defendant made a change in the management of the property. On the question as to what transpired between the visiting agents and the plaintiff who was found by them in the field, and to whom they then tendered their letter of credentials, there is a conflict between his testimony and that of one of the agents.

But without going into unnecessary details, we reach the conclusion that plaintiff's conduct was rude and reprehensible, and of a nature to justify the agents to abandon their investigation.

This conclusion is fully confirmed by the subsequent conduct of plaintiff, who consented, at defendant's request, to apologize for his behavior on the occasion referred to. The motive of the defendant in making that request was to arrange matters in such a shape as to be able to retain plaintiff as his overseer, which he was anxious and eager to do. But that plan was likewise frustrated, and the defendant was left but one alternative, either to change his overseer, or to lose his plantation.

It is no answer to this position to suggest that he could have secured another merchant. It is not a violent presumption to assert that a planter situated as the defendant was at that time, can find no other merchant; even when the mortgage creditor, whose claim is equal to the value of the plantation, is willing to grant time. But in this case the mortgage creditor, who was the irritated merchant himself, dictated the terms of his indulgence, and these involved the discharge of the overseer.

We have no concern with the question of the propriety or justice of the *ultimatum* which was thus imposed on the defendant.

For the purposes of this case, it suffices to say that the defendant was completely at the mercy of his creditor and merchant, and that plaintiff's conduct was the proximate cause of his employer's embarrassment in that connection.

To the latter the situation was peculiarly painful; he ardently desired to retain plaintiff; but if his property was sold, both were sacrificed; the one lost his plantation, the other his situation as manager. What was he to do? The law, as well as common sense, dictated the course which he pursued, and the law cannot now punish him for an action which was forced on him by circumstances over which he had no control, and which resulted from the imprudence of plaintiff himself, who now seeks to assume the legal position of the aggrieved party.

There was nothing in the correspondence between the different parties, or in the relative positions between the defendant and his commission merchant, all of which were well known to plaintiff, to justify him to treat the proposed examination of the property by the designated agents as an intrusive interference with his employer's business and affairs, or to qualify them as *spies*, as he did in a letter written to defendant on the same day that the visit occurred.

He was informed by the merchant's letter that the examination was to be made with the consent of defendant; he had no reason to suspect the good faith of the statement; he knew that the merchant was the

authorized agent of the former; he himself had frequently corresponded with him as such, in ordering needed plantation supplies, and in other matters connected with his management of the plantation.

The visit was a plain and rational business transaction, which plaintiff had no reason to treat as anything offensive, or aggressive to him, or to his employment as overseer and manager. Through his ill-timed resistance to the execution of the plan, he seriously jeopardized the best interests of his employer, which it was his duty to protect, and his conduct must be held in law as a reprehensible violation of his duty. Youngblood vs. Dodd, 2 Ann. 187.

Hence his discharge was justifiable.

It is, therefore, ordered that the judgment appealed from be annulled, avoided and reversed, and it is now adjudged and decreed that plaintiff's demand be rejected and that his action be dismissed at his costs in both courts.