No. 13,777.

WOODLEY WATSON VS. CLARA BARBER, ADMINISTRATRIX.

SYLLABUS.

Where the plaintiff sues upon an express contract upon which action accrued annually subject to the prescription of three years, a failure to institute the action for its enforcement within the period of prescription, bars the action, notwithstanding the fact that it was not brought by reason of an expectation and hope by the creditor that the debtor would make testamentary dispositions in his favor sufficient to cover the claim. Verbal expressions of the debtor indicative merely of his intention to make a legacy in favor of the creditor, but not rising to the character of an agreement to postpone payment of the claim, does not suspend prescription. See Adams vs. Succession of Mills, 49 Ann. 775 ; Succession of Gaines, 45 Ann. 1434.

APPEAL from the Sixth Judicial District, Parish of Morehouse—
Hudson, J., ad hoc.

*Andrew Augustus Gunby,* for Plaintiff, Appellant.

*Madison & Madison,* for Defendant, Appellee.

The opinion of the court was delivered by NICHOLLS, C. J.

(Original decree of this court set aside on rehearing.)

STATEMENT OF THE CASE.

NICHOLLS, C. J. The plaintiff asks judgment against the Succession of Thomas Barber for the sum of two thousand eight hundred and fifty dollars, with legal interest. His demand is based upon allegations that for a number of years, and particularly from the year 1889, the said Thomas Barber had considerable property and business interest in the parish of Morehouse; that in the year 1889, Barber employed him to keep his books, accounts, and make all settlements and calculations for him, ship and settle for all cottons, manage his gin and grist mill, which did business, not only for Barber individually, but for the public, and also his mercantile business, and keep all books and to manage generally all of his

property interests. and farming operations; and agreed to pay him for his services a salary of three hundred ($300) dollars *per annum* for the year 1889, and each subsequent year; and paid him said salary for the year 1889; that his employment under said contract and agreement continued during the year 1890 and subsequent years, until the death of Barber, in July, 1899, and petitioner faithfully performed all of said services required up to said time, and that Barber was owing him therefor, under said contract, the sum of twenty-eight hundred and fifty ($2850) dollars, after deducting the sum of three hundred ($300) dollars paid in 1889. That Barber, instead of paying his salary as it fell due, agreed with petitioner in the year 1890, that instead of payment of his salary each year he would postpone payment thereof from year to year, and would bequeath to petitioner a large portion, if not all, of his property, which would be ample to satisfy the amount due him for his services and leave him over and above a good legacy. That petitioner continued to perform said services and did not demand payment and settlement on account of the understanding with said Barber and the belief and expectation that Barber would compensate and pay him in said manner, payment of same having been deferred and postponed as aforesaid. That Barber, during his last illness, made an effort to carry out his said agreement, and sent for a member of the law firm of Madison & Madison, of Morehouse parish, and at the same time for petitioner, for the purpose of making his last will and testament with petitioner, but died before said attorney and petitioner could reach his bedside, and before Barber had made his last will and testament, without having in any manner paid petitioner the amount due. That, under said agreement, contract and understanding, petitioner was now entitled to recover the sum of three hundred dollars per year from January 1st, 1889, to July 18th, 1899, the date of death of Barber, less the sum of three hundred dollars paid in 1889, leaving said sum of twenty-eight hundred and fifty dollars due petitioner.

In the event the court should decide that there was no contract, as alleged, petitioner averred that during said years he faithfully performed all of said services continuously for Barber, and that they were fully worth the sum of twenty-eight hundred and fifty dollars, from January 1st, 1890, to the death of Barber; that Barber was old and illiterate, and said services performed by petitioner for him were valuable and indispensable, and Barber could not have conducted and managed his business had he not received the benefit of the services of petitionr.

That petitioner performed said services under the express and positive promise that he would bequeath him a large portion of his property, and Barber, being without children or collateral kindred, so far as petitioner knew, petitioner confidently believed and expected that Barber would be able to and would without fail cary out and fulfill his promise and agreement, said promise and agreement having been made by Barber to induce petitioner to perform said services, and in good faith. That Barber, having failed to compensate petitioner for said services and to fulfill in any way his promise and agreement, in faith of which petitioner performed said services, petitioner was entitled to recover said sum as a rasonable and just compensation and value for said services. That demand had been made on Clara Barber, administratrix, to allow said claim as a just claim against said succession, but she has refused to do so.

Defendant filed an exception of the prescription of one, three and five years in bar of plaintiff's action, and under reservation of same answered. After pleading the general issue, she averred that plaintiff was a foster son of Thomas Barber, who raised him from an infant and supported and maintained him and his family up to the time of his (Barber's) death; that plaintiff was forty or fifty years old, was the father of a large family, had never been successful, but always in debt, always prodigal and extravagant; that both he and his family had always been pensioners on Barber's charity and received liberally of his bounty; that, notwithstanding these facts, Barber from time to time made valuable donations to plaintiff, especially the donation of the gin property and improvements, worth at least fifteen hundred ($1500) dollars, and that all these things considered, plaintiff's demands showed the height of ingratitude and avarice, and had no foundation in fact, law or good conscience. That, instead of her being indebted unto plaintiff, he was largely indebted unto her as administratrix of Thomas Barber's Succession; and, assuming the position of plaintiff in reconvention, she averred:

That Woodley Watson, plaintiff, was justly and legally indebted unto her as administratrix of the Succession of Thomas Barber in and for the full sum and amount of eight hundred and forty-nine dollars and ninety-nine cents ($849.99), at five per cent. interest on $527.49 thereof, from the — day of ———, 189—, till paid, and two per cent. interest on $422.50 thereof from February 3rd, 1896, till paid, for this, to-wit: That Woodley Watson was indebted unto the Bastrop

Mercantile Company, Limited, and to Wolff & Silbernagel, in the sum and amounts as set out in and shown in suits Nos. —— and ——, on the docket of this court; that, through the importunities of the said Watson, Barber assumed said debts and gave his notes or note therefor; that said notes, when paid, amounted to, including interest, said sum of $527.49, which the said Barber and she, as the administratrix of his succession, had paid; and that though amicable demand had been repeatedly made, no part of said sum had ever been refunded by said Watson; that the residue of said total amount of $849.99 was evidenced by a certain mortgage note, dated February 3rd, 1896, and due January 1st, 1901, and bearing two per cent. interest from its date till paid, and payable to the order of Thomas Barber and signed by Woodley Watson.

She prayed that plaintiff's demand be rejected, for judgment in reconvention, with the right reserved to proceed on the mortgage note when it matured.

Plaintiff excepted to the reconventional demand on the ground that both plaintiff and defendant resided in the same parish, and the reconventional demand did not grow out of nor was it necessarily connected with the demands set up by plaintiff.

In view of the premises plaintiff prayed that the said reconventional demand be stricken out and rejected, and for general relief.

The court rendered judgment against the paintiff, and he appealed.

## OPINION.

The plaintiff sues upon an alleged verbal contract with Thomas Barber, for services to be rendered by him to Thomas Barber at a fixed salary of three hundred dollars per year. The contract is averred to have been made in 1889 and services rendered under it until the death of Barber in 1899. Annexed to plaintiff's petition is an account in which a charge or claim is made for three hundred dollars per year for each of the intervening years. The defendant denies the existence of any claim and asserts that whatever services were rendered were gratuitous and such as would naturally be performed without pay by one who had been taken into the family of another and reared by him as a member practically of his family. She maintains that Barber, by reason of such relations, extended to the plaintiff kindnesses and benefits that would more than requite him for anything which he had done. She pleads the prescription of one, two, three and five years. She further claims that during the period for which the plaintiff claims a salary he

Watson vs. Barber.

had come under a large acknowledged indebtedness to Barber, for a part of which she claimed judgment in reconvention. Defendant has asked no amendment of the judgment.

A branch of this case will be found reported in 52 Ann. 957 (Succession of Barber). Plaintiff seeks to ward off the effect of the prescription pleaded, by urging that his services were continuous, and he did not exact payment because he had been led to believe that he would be remunerated for his services in the will of Barber. He evidently relies upon the line of decisions commencing with the Succession of Fowler, 7 Ann. 778, and extending down to Succession of McNamara, 48 Ann. 45. These decisions were referred to and cited in Adams vs. The Succession of Mills, 49 Ann. 779, in which attention was called to the change which had been made in the law of prescription by the present Article 2278 of the Civil Code, and the statute on which the change in that article was based. The plaintiff does not sue upon a *quantum meruit* or an implied contract, but upon an express contract with annual stops. In the Adams case, in the 49th Annual, referring to plaintiff's claim, we said: "It is not claimed that either prior to or as the services were being rendered there was any agreement or understanding that plaintiff's services were to be compensated, still less that the value or manner or time of payment thereof had been fixed. He relies upon the vaguest kind of declarations of Mrs. Mills after the alleged services were rendered that she was under obligations to him which she would remember and recognize in her will. * * * The parole evidence tendered by plaintiff was not to establish a contract which, by its special terms at its inception, was of a character such as to withdraw it from the prescription ordinarily applicable to contracts of that kind. What he attempted to do was to prove that services, which as to their payment would be prescribed by three years, had been taken out of such prescription and thrown under that of five or ten years by a subsequent promise or acknowledgment."

These remarks, to some extent, find application here. Viewing plaintiff's claim as arising under an express contract his right of action accrued at the end of each year and would be prescribed accordingly. The demand of the plaintiff for remuneration for services rendered prior to the three years preceding the death of Thomas Barber are prescribed, and are so decreed to be. Plaintiff does not pretend that there was any agreement between himself and Barber that the term of payment of his claim should be extended to the period of the latter's death, or that the

consideration originally fixed should be replaced by a promise of provision of some kind for the plaintiff through future testamentary disposition in his favor. The utmost that is claimed is that in consequence of independent declarations of Barber that he intended to make such a disposition, giving rise to a hope in plaintiff that it would be carried into execution, he had postponed taking any action towards obtaining payment for fear, as he said, that it would make him mad. Expressions by Barber expressive of mere intent did not make an obligation (C. C. 1813-1814). We do not think that anything which Barber may have said on this subject rose to the character of an agreement to change the terms of an express contract. The plaintiff's contention that there has been a continuity in his services which affects the legal situation in his favor through that fact, is not well grounded. In the first place, he was replaced for a time by Barber's stepdaughter, and in the next place, though the services might not have been broken as a fact, yet they must be taken under the pleadings, to have been rendered under separate, distinct annual contracts. We recognized in Alba vs. Moriarty the principle of reconduction of a contract for services, but that doctrine is predicated upon the presumption of continuance of existing conditions. In this case the situation changed very materially after 1889. Plaintiff continued his services, but they were much less than they were at that time. Defendant's contention that the services were gratuitous *ab initio* is not, we think, sustainable. We think there was an original agreement in 1889 to pay the plaintiff a salary of three hundred dollars, but we find no direct evidence of a renewal of that contract, but plaintiff continued to do service, and it may be presumed in the absence of counter proof that there was an agreement of some kind for remuneration to some extent, at least up to the time that he was replaced for a while by defendant's daughter. There is no doubt that while the plaintiff was performing the services for which he claims remuneration he became indebted in different ways to Barber, for which indebtedness he executed his notes. From that fact defendant reasons to the non-existence of any counter claim by Watson against Barber. Had there been such a claim she contends the parties would have offset one of the debts against the other. That, as a mere matter of presumption, would have very considerable force. Such a presumption was acted upon adversely to the plaintiff in Wood vs. McCranie, in 21 Ann. 558; so, also, it was invoked and used to some extent in Strahorn-Evans Commission Company vs. Bryan, 104 La. R. 664. The presumption, however, yields

to positive evidence. Although by Article 2208 of the Civil Code, compensation is declared to take place of course by the mere operation of law, even unknown to the debtors, that is not, as between the parties, a forced legal result. The two debts may continue outstanding as between the parties if such be their agreement and will. Article 373 of the Code of Practice declares that: "If defendant suffer judgment in the original suit without pleading such compensation as he may have to oppose as provided above, he shall not on that account lose his right of action against the plaintiff to recover whatever amount such plaintiff owes to him, but he must bring his action before the court within whose jurisdiction the plaintiff has been domiciled." We can see a reason in this particular case why the parties should have preferred not to have the two debts extinguished by compensation. Watson was in debt to several persons, among others to Thomas Barber, whose relations with him were such as to incline him to use the existence of that debt as a protection to him as against the other creditors by a mortgage on his property, or a transfer of the same with understood right of redemption, and this protection was in fact given to him by Barber. This is the extent of what was meant when Watson says the notes, etc., were given for his "protection." It can not be pretended that the indebtedness and notes were simulated.

The plaintiff, instead of waiting until the defendant had sued him upon his notes and then pleading in compensation, has taken the initiative and brought suit directly upon his own alleged claims declaring upon an express contract. The defendant, instead of pleading compensation, has filed a plea in reconvention. The court has said nothing about the latter demand. The defendant has not appealed nor asked any amendment.

The court, we think, has offset the two demands which the parties have presented against each other. It did not pass on the plea of prescription. We think the plaintiff had a claim to some extent against the defendant, subject to a settlement of the claim which the succession had against him. We think he has no reason to complain of the judgment as rendered. If there be error, it is certainly not against him. The judgment appealed from is affirmed, the right of parties in relation to plaintiff's mortgage note (which, though referred to in the pleadings and evidence, was not declared upon by the defendant in reconvention) being expressly reserved.

## On Rehearing.

NICHOLLS, C. J.   A rehearing was granted in this case for the reason that our attention was called to the fact, which the court had overlooked, that the plaintiff had excepted to the reconvenional demand filed by the defendant, on the ground that it was not connected with or incidental to the main demand, and that exception had been maintained and the reconventional demand was dismissed.   The mistake arose from the fact that the action of the District Court on that subject appeared only in the stenographer's note of evidence and not in the minutes, and that, notwithstanding this entry, the same notes showed later the introduction of evidence, over repeated objections of plaintiff, upon the matters which had been made the subject of the reconvention, and they were also very fully discussed in the argument of the case.   Acting upon the assumption that the District Court had passed upon the reconventional demand, we construed the judgment rendered by it to have held the demands of the plaintiff and those of the defendant to have offset each other, and as the defendant did not appeal and asked no amendment of judgment, we affirmed the judgment, remarking, however, that if there was error therein, it was not to the prejudice of the plaintiff.   We recognized, however, that the services which plaintiff had rendered were not gratuitous, and that he was entitled to remuneration to some extent.   We did not attempt, under our view of the situation, to fix any amount for the same. · We are satisfied that the court did not act upon the reconvention, notwithstanding the fact of the introduction of evidence upon the claims.   Plaintiff insists that the court must have "reconsidered" its action dismissing the reconvention, but there is nothing in the record to support the argument other than the fact itself of the introduction of the testimony over plaintiff's objections.   There is some inconsistency in plaintiff's insisting that the reconvention was before the court, in view of the fact that he maintained throughout (shown by his pleadings and exceptions) that it could not be legally considered.

We think the evidence was introduced by the defendant, not for the purpose of obtaining a judgment upon the reconventional demand, but by showing the existence of the claims advanced therein to argue from that fact the great want of probability of the coexistence with them of any claims of the plaintiff against Barber.   For that particular purpose and to that extent the evidence was relevant, and it was for that purpose undoubtedly offered and permitted to be introduced.

The error which we fell into in regard to this matter necessitated a reëxamination of the case. The defendant has urged upon us to reject plaintiff's demand entirely upon this reëxamination.

We adhere to the conclusion announced in our original opinion, that the plaintiff is entitled to some remuneration, notwithstanding the fact of the close relations which existed between him and Barber from the former's early childhood. The latter himself recognized that when the plaintiff reached his majority and had special responsibilities of his own thrown upon him, he was entitled to compensation for services which took up so great a portion of his time as did those he was then rendering. He therefore agreed to pay him three hundred dollars a year. At that time and for some time after Barber owned a store, of which Watson had charge; he also had a couple of small places, calling for some special clerical and other work. Matters did not remain in that condition. Watson himself bought the store from Barber, and conducted it on his own account and his services afterwards more nearly approached those which would be expected from a member of Barber's family than they had. As there was, however, no evidence of any expressed alteration in the understanding that he should be paid, we thought that matters should not be placed upon a changed footing in that respect; but we none the less recognized the fact that the original agreed salary of three hundred dollars a year could not be taken as a continuing standard of the value of the plaintiff's services, in view of their extent having been so greatly reduced. Watson himself testifies that when he asked Barber for remuneration upon that valuation, he objected and became violently angry, so much so that he discontinued his services altogether, substituting his stepdaughter in plaintiff's place. We think it quite likely that the plaintiff had some expectation, and, perhaps, a reasonable expectation, that Barber might provide for him in his will, and that but for that expectation he might not have been as willing as he was to continue his services, but that view of the matter does not control the legal situation at all. The plaintiff urges that there is very strong evidence in the record as to the extent and value of his services up to the death of Barber. We do not give the testimony he refers to the same probative force which he does.

The witnesses did not pretend to have any personal knowledge of the details of plaintiff's duties and services. Their knowledge was of a very general and indefinite character and referred besides to a great extent to services rendered years back. Plaintiff received from Barber up to

the very moment of his death constant acts of kindness, and remuneration for his services has not been considered from the same rigid standpoint as it would independently of that fact and for services rendered by one stranger to another (Succession of Turnbull, 34 Annual, 890). It is difficult to say for what amount plaintiff should have judgment, but after the best consideration we can give to the matter, we think he would be fully compensated by a judgment of two hundred dollars.

For the reasons assigned it is ordered, adjudged and decreed that our original decree herein be and the same is set aside, and it is now ordered and adjudged that plaintiff, Woodley Watson, do have and recover judgment against defendant, the Succession of Thomas Barber, for the sum of two hundred dollars, with the costs in both courts.