## BERRY v. LAWTON.

### No. 4531.

Court of Appeal of Louisiana.
Second Circuit.

April 28, 1933.

R. V. Reeves and McIntosh & Sims, all of Oak Grove, for appellant.

Vinson M. Mouser, of Columbia, for appellee.

TALIAFERRO, Judge.

Plaintiff's husband, J. S. Berry, was killed by the accidental explosion of defendant's cotton gin on September 8, 1932. It is admitted that when killed, deceased was in the active discharge of the duties arising from and connected with his employment with defendant, and that his monthly wage was $125.

This suit was instituted by the widow of deceased, individually and as natural tutrix of their five minor children, under the age of 18 years, to recover compensation at the rate of $18.76 per week for a period of 300 weeks, beginning September 15, 1932, and to recover $250 expenses incurred on account of and in connection with deceased's funeral.

Defendant denies any liability to plaintiff, for the reason that at the time the contract of hiring was entered into there was executed and signed by deceased an election that his employment with and by defendant should "not come under the Workmen's Compensation Law, known as Act No. 20 of 1914, and the acts amendatory thereof." Defendant further avers that for this reason, plaintiff has no right of action against him, and specially pleads same in bar of her suit.

The lower court rejected defendant's special defense and gave plaintiff judgment for compensation, as prayed for, and also for $70 additional, as reimbursement for funeral and undertaker's expenses paid by her. From this judgment defendant has appealed.

The deceased was employed by defendant, first, on September 23, 1931, and worked at his gin during the ginning season of that year, and for that part of the 1932 season to the date of his death. He was paid a monthly wage of $135 for his services in 1931. On September 29, 1931, after the commencement of his employment with defendant, he signed the following document:

"State of Louisiana, Parish of West Carroll:

"Be it known that in accepting a job with Clay Lawton's Gin, as gin worker doing general duties, that I shall not hold Clay Lawton Gin Company liable under the Workmen's Compensation Law, known as Act No. 20 of 1914 and later acts amendatory thereto.

"And in order to carry out this understanding I do hereby elect not to come under these laws this 29th day of September, 1931."

On September 2, 1932, he signed another paper in exact form and language, except as to date, as that signed by him in 1931, copied above.

These two papers were filed in evidence. The admissibility of the first one was objected to by plaintiff because, and for the reason, that it related to a contract of employment which had expired long before the death of Berry, and did not relate to or have bearing

upon the contract of employment in force at the time of his death.

The ginning season commences the latter part of August or early part of September and continues until there is no longer any cotton to gin, which generally is a period of from 3 to 4 months. Between seasons, the gins are idle and not operated for any purpose. Deceased owned a farm which he cultivated, and on which he lived with his wife and children for the period between the closing of the 1931 ginning season, to the beginning of the 1932 season. He was only paid for his services to defendant for the time he actually worked.

█ It is seriously urged by defendant's counsel that the employment of deceased, in September, 1931, was continuous over the period the gin was not in operation, and that when he resumed work at defendant's gin in the fall of 1932, it was under the contract and agreement which had its inception in September, 1931, and, therefore, the election made by defendant in 1931 was in effect and governed the contractual relations between him and defendant when the gin exploded. We do not think the record sustains this contention, and will assign our reasons for this conclusion.

Defendant admits, as a witness, that he told deceased about the middle of the 1931 ginning season that if he worked for him in 1932, the wages would be less than those paid in 1931; that deceased had the right to determine for himself if he desired to work in 1932; that when he employed deceased in the fall of 1931, there was no stipulated term of the contract, and he, defendant, felt that he had the right at any time to "let him out." In addition to this, no wages were paid deceased between ginning seasons, when he was engaged with his own personal farming business, and, as still more significant of defendant's appreciation of his and deceased's relations, he required deceased to execute another election not to be governed by the Workmen's Compensation Laws, at the beginning of the 1932 season. Against these established facts, defendant offered testimony to prove that he advanced deceased some money in March, 1932, because it was understood or anticipated that he would again work at the gin the following fall, and that deceased retained possession of one of the gin's keys, after the close of the 1931 season, and refused to accept an offer from another gin owner to perform the same kind of service he was rendering defendant. However, this gin owner testified that just before the close of the 1931 season, while deceased was doing service at defendant's gin, and once after the close of the season, he came to him (witness) and offered to work at his gin in 1932, and the offer was accepted; that he was of the belief deceased was going to work for him at his gin during the 1932 season until he informed him in May that he had agreed to work for defendant. This witness also stated that he only employed his gin labor for the ginning season.

Defendant's explanation for having deceased sign the second election is that he had misplaced the first one, and that as he had some new men employed for the 1932 season, who had not worked for him in 1931, he had deceased sign the election at the same time the others did.

This résumé of the evidence on the question of the duration and continuity of deceased's employment to defendant leaves little or no doubt that, after the close of the 1931 ginning season, both the deceased and defendant felt that their contract was at an end; that each was free of any control over the other as to the 1932 season's work, and that, if deceased did resume work for defendant, it would be at a reduced wage. In view of the brief period a cotton gin operates annually, this attitude of the parties toward each other appears to be a most natural and reasonable one.

█ The evidence discloses that deceased commenced to work at defendant's gin on or about August 25th, 14 days before he was killed. Mrs. Berry testified that he began work under his second employment with defendant some 2 weeks before his death. He signed the second election on September 2d, some 8 days after he began work, and 6 days prior to his death.

Paragraph 3 of section 3 of Act No. 20 of 1914, as amended by Act No. 85 of 1926, provides that every contract of hiring between employer and employee, engaged in any hazardous trade, business, or occupation, as defined by said act, shall be presumed to have been subject to its provisions, " * * * unless there be as a part of said contract an express statement in writing either in the contract itself or by written notice by either party to the other, that the provisions of this act other than Sections 4 and 5 are not intended to apply, and it shall be presumed that the parties have elected to be subject to the provisions of this act and to be bound thereby, unless such election to be terminated as hereinafter provided."

Paragraph 4 of section 3 of the act makes provision for the manner of terminating the presumed election referred to in paragraph 3, quoted above. This paragraph states that such election may be terminated by either party to the contract of hiring giving written notice to the other not less than 30 days prior to the accident, that the provisions of the act (other than sections 4 and 5) shall no longer apply (Act No. 38 of 1918).

Under these plain provisions of the statute, all contracts of hiring, executed after the law became effective, are subject to and controlled by its stipulations, unless one or both parties to the contract, in the manner laid down by paragraph 4 of section 3, elect-

ed to make the contract not subject to the statute. If the election is made contemporaneous with the contract of hiring, then its effect is immediate, but if the election is made after the employee has entered upon the discharge of his duties, under the employment, then it does not take effect until 30 days have elapsed. Therefore, under paragraph 4 of section 3 of this statute, if the election is made after the employee's service has begun, and he suffers compensable injuries within 30 days from the time the election is made, his rights are controlled and governed by the Workmen's Compensation Law.

Applying this construction of the law to the facts of the present case, it is clear that the second election made by Berry, the deceased, had not become effective when he was killed, and, therefore, the suit of the widow and heirs was properly brought under Act No. 20 of 1914, as amended.

The question here discussed, in some respects, was considered in Boyer v. Crescent Paper Box Factory, Inc., 143 La. 368, 78 So. 596, and in Philps v. Guy Drilling Company, 143 La. 951, 79 So. 549. This last case expressly overruled Whittington v. Louisiana Sawmill Company, 142 La. 322, 76 So. 754, which held that where the accident happened within 30 days after the beginning of employment, the case was not governed by the Workmen's Compensation Law. The question is also considered in Ross et al. v. Cochran & Franklin Company, Inc., 10 La. App. 719, 122 So. 141.

Defendant advances the contention that the principle of reconduction of contracts applies to this case, but, for the reasons assigned by us, supra, we do not think this position tenable. The facts of the instant case may be easily differentiated from those in the cases he cites: Alba v. Moriarty & Co., 36 La. Ann. 680; Sullivan v. N. O. Head & Stave Co., 44 La. Ann. 791, 11 So. 89; Watson v. Barber, 105 La. 804, 30 So. 127; Lalande v. Aldrich, 41 La. Ann. 307, 6 So. 28.

For the reasons assigned, the judgment appealed from is affirmed.